IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

PAULA KAY CAGLE, )
 )
    Plaintiff, )
 )
v. ) Case No. CIV-12-494-F
 )
CAROLYN W. COLVIN,[1] )
Commissioner, Social Security )
Administration, )
 )
    Defendant. )

# REPORT AND RECOMMENDATION

Paula Cagle ("Plaintiff") has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for disability insurance benefits under the Social Security Act. United States District Judge Stephen P. Friot referred this matter for proceedings consistent with 28 U.S.C. § 636(b)(3) and it is now before the undersigned Magistrate Judge. Upon review of the pleadings, the administrative record ("AR") and the parties' briefs, the undersigned recommends that the Commissioner's decision be affirmed.

## I.     Administrative proceedings.

In support of her application for benefits, Plaintiff alleged that her

---

[1] Effective February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as Defendant in this action.

impairments became disabling in April 2008; however, she later amended that date to April 2009. AR 11, 27-28, 121-23. Plaintiff's claim was denied and, at her request, an Administrative Law Judge ("ALJ") conducted a hearing. In her October 2010 decision, the ALJ found that Plaintiff is not disabled within the meaning of the Social Security Act. *Id.* at 20. The Appeals Council of the Social Security Administration declined Plaintiff's request for review. *Id.* at 1-5. Plaintiff, through counsel, has sought review of the Commissioner's final decision in this Court. Doc. 1.

II.     **The ALJ's findings.**

The ALJ found that Plaintiff meets the insured status requirements through December 2013, has not engaged in substantial gainful activity since April 2008, and has severe "degenerative disc disease and affective mood disorder." AR 13. The ALJ also found that Plaintiff has the residual functional capacity ("RFC")[2] for a limited range of light work with exertional and nonexertional limitations, and can perform jobs existing in significant numbers in the national economy. *Id.* at 16-20.

III.    **Standard of review.**

This Court's review is limited to whether the ALJ's "factual findings are

---

    [2]     Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

2

supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue,* 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quotation omitted). In determining whether substantial evidence exists, the Court "will not reweigh the evidence." *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004).

## IV. Determination of disability.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five steps in detail).

Under this sequential procedure, Plaintiff bears the initial burden of proving she has one or more severe impairments. *See* 20 C.F.R. § 404.1512; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff makes a prima facie showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show Plaintiff retains the capacity

3

to perform a different type of work and that such a specific type of job exists in the national economy. *See Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

## V. Plaintiff's claims of error.

Plaintiff first challenges the ALJ's finding that Plaintiff's affective mood disorder does not meet or medically equal a listed impairment. Doc. 16, at 9-11. According to Plaintiff, the ALJ's "own explanation seem[s] to indicate marked rather than moderate limitations in the areas of activities of daily living and social functioning[.]" *Id.* at 9. Further, Plaintiff alleges that the ALJ failed to discuss "a substantial amount of evidence consistent with marked limitations . . . ." *Id.* at 9-11.

Next, Plaintiff alleges that in assessing her RFC, the ALJ "selectively disregarded" some of the examining physician's physical findings. *Id.* at 11-12.

Finally, Plaintiff argues that the ALJ did not properly evaluate the state agency psychologist's opinion. *Id.* at 12-15. Specifically, Plaintiff claims that the ALJ considered Dr. Millican-Wynn's narrative comments but failed to discuss some of the limitations Dr. Millican-Wynn checked on the mental residual functional capacity assessment (MRFCA) form. *Id.* at 14-15.

## VI. Analysis.

Based on the foregoing arguments, Plaintiff seeks reversal of the

Commissioner's final decision denying her benefits. The undersigned disagrees and recommends affirming the decision.

> **A. The ALJ's alleged selective review of the evidence in finding that Plaintiff's affective mood disorder does not meet or equal a listed impairment.**

At Step 3, an ALJ is required to determine whether a claimant's impairment is "'equivalent to one of a number of listed impairments that the Secretary acknowledges as so severe as to preclude substantial gainful activity.'" *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quotation omitted). In so doing, she must "discuss the evidence" and "explain why [she] found that [the claimant] was not disabled at step three." *Id.*

Here, the ALJ considered whether Plaintiff's affective mood disorder meets or equals Listing 12.04. AR 14. In relevant part, this listing requires medical evidence that Plaintiff has "marked" restrictions in at least two functional limitations involving restrictions of daily living activities, difficulties in maintaining social functioning, or difficulties in maintaining concentration, persistence, or pace. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04(B).

The ALJ found that Plaintiff's affective mood disorder does not meet or medically equal Listing 12.04 because while Plaintiff has "marked" difficulties in maintaining concentration, persistence, or pace, she has only "moderate" difficulties in her daily living activities and maintaining social functioning. AR

14-15. Specifically, the ALJ opined:

> The claimant completed a function report in October of 2008 after applying for disability. In it, she described cooking, cleaning, shopping, and generally caring for herself and her household. The claimant reported that pain limited these activities to some degree. However, during her testimony, she indicated that her condition has worsened, and her activities of daily living are more limited now due to depression and anxiety. The claimant suggested that she is always fatigued and is now more reliant on her husband and daughter for help. She reported spending multiple days per month never leaving her bed due to her mental state. Based upon the claimant's testimony, the undersigned finds that she has a moderate restriction in activities of daily living.
>
> The claimant testified that she lost her job as a pharmacy technician due to her physical limitations as well as her mood. She reported significant social isolation and loss of motivation. The claimant suggested that she spends some days never leaving her bed and fearing the thought of leaving her home. She claimed to avoid social activities as much as possible. The claimant also claimed to avoid most of her daughter's school related activities, with the exception being softball games. During these games, the claimant testified that she sits by herself and watches, trying to avoid others. As a result, the undersigned finds that these factors indicate the claimant has a moderate restriction in social functioning.

*Id.*

Plaintiff challenges these findings on two grounds. First, she alleges that the ALJ's "own explanation seem[s] to indicate marked rather than moderate limitations . . . ." Doc. 16, at 9. But as discussed below, the ALJ considered all of the evidence, favorable and unfavorable. And, it is not the Court's role to reweigh that evidence. *See Hilson v. Barnhart*, 64 F. App'x 134, 136 (10th Cir.

2003) (rejecting claimant's allegation that the ALJ should have found her limitations "marked" rather than "moderate" because the evidence was both "positive and negative" and the court could not reweigh it). Accordingly, the undersigned finds no reversible error on this issue.

Plaintiff more strenuously argues that the ALJ failed to discuss all of the relevant evidence. For example, she claims that the ALJ: (1) failed to accurately portray the extent of her limitations in household chores and shopping as explained in the October 2008 report; (2) disregarded her husband's statements entirely; (3) ignored the evidence that she neglected her personal hygiene; (4) ignored her hearing testimony that she had experienced increased difficulties in performing household chores; (5) failed to discuss her inability to interact with co-workers, periodic inability to speak to her family in 2008, and shutting herself in her room at times in 2010; and, (6) did not cite a physician's opinion that Plaintiff's "psychological functioning was poor with 'quite severe' symptoms of depression." Doc. 16, at 10-11.[3]

---

[3] Plaintiff also complains that the ALJ "did not discuss most of the medical findings regarding Mrs. Cagle's depressed, anxious, and flat mood and/or affect, crying, tension, and dysthymia[.]" Doc. 16, at 11. But related to this statement, Plaintiff provides no specific examples of what evidence was overlooked and does not cite to any evidence in the record. *Id.* This undeveloped argument defies meaningful judicial review. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("To the extent that [Plaintiff] raises additional issues involving the ALJ's evaluation of the medical evidence, her arguments . . . are insufficiently developed for our review."); *see also Wall v. Astrue*, 561

7

A review of the ALJ's findings dispels these allegations. Clearly, the ALJ did in fact consider that: (1) the October 2008 report showed that pain had limited Plaintiff's ability to do household chores and shopping; (2) Plaintiff's conditioned had worsened since that report and her activities were now more limited because of depression; (3) Plaintiff's mood had led in part to her losing her job; and (4) Plaintiff experienced "significant social isolation" and avoided social activities including those involving her daughter. AR 14-15.

The ALJ's discussion was silent regarding some of the evidence Plaintiff relies upon; however, she was not required to discuss every piece of evidence. Instead, the ALJ was required to discuss only the significantly probative evidence that she rejects. *See Clifton*, 79 F.3d at 1009-10.

In this instance, Mr. Cagle's statements overwhelming relate to Plaintiff's *physical* limitations. AR 177-84. And, Plaintiff testified that medication had improved her neglect of her personal hygiene, which had lasted only for about six months. *Id*. at 54. Thus, the ALJ committed no error in failing to specifically mention these items which are not significantly probative to the relevant issue. *See Korum v. Astrue*, 352 F. App'x 250, 253-54 (10th Cir. 2009) (rejecting an argument that the ALJ failed to discuss all of the evidence where "[t]he evidence

---

F.3d 1048, 1065 (10th Cir. 2009) (refusing to review claimant's claim which she had "failed to support" with "any 'developed argumentation.'" (citation omitted)).

that the ALJ did not mention was not of such quality as to require discussion under *Clifton*"). Likewise, the ALJ had no duty to specifically mention the evidence that Plaintiff's affective mood disorder is "quite severe" because she adopted – not rejected – that evidence.

In sum, the ALJ's opinion reflects consideration of all the significantly probative evidence and the Court cannot reweigh that evidence. Accordingly, the undersigned recommends affirming on Plaintiff's first claim for relief.

**B.     The ALJ's alleged selective review of the examining physician's physical findings during the RFC analysis.**

According to Plaintiff, the ALJ "selectively disregarded" the examining physician's opinion that Plaintiff has "'rather marked'" limited lumbar mobility, a "20 percent reduction in bilateral hip flexion, and positive bilateral straight leg raise testing both sitting and supine." Doc. 16, at 11-12. The undersigned disagrees.

The ALJ discussed Dr. Metcalf's report, noting:

> The claimant underwent a consultative medical examination with Dr. James Metcalf on November 13, 2008. Dr. Metcalf reported that the claimant had no chronic pain behaviors and walked without limp or difficulty, but appeared depressed. He indicated that the claimant demonstrated decreased range of motion in all planes of the lumbar spine and limited flexion and extension of the cervical spine. Dr. Metcalf diagnosed her with chronic lower back pain and depression.

AR 17.

Based on this and other evidence in the record, the ALJ determined that Plaintiff was limited to sitting, standing and walking no more than six hours in an eight hour workday and could push or pull no more than twenty pounds occasionally and ten pounds frequently. *Id.* at 16.

The ALJ considered Dr. Metcalf's report and findings and generally incorporated them into Plaintiff's RFC. The ALJ was not required to address every detail of Dr. Metcalf's assessment. *See Clifton*, 79 F.3d at 1009-10; *see also Wall*, 561 F.3d at 1068-69 (noting that where the ALJ is not rejecting evidence to determine a claimant's RFC, "'the need for express analysis is weakened'" (citation omitted)). Consequently, the undersigned finds no ground for reversal on this issue.

### C. The ALJ's failure to specifically discuss Dr. Millican-Wynn's check-box finding in the MRFCA form.

A state agency psychologist, Dr. Millican-Wynn, completed Section I of a MRFCA form and checked a box indicating that Plaintiff has moderate limitations in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. AR 229. In her narrative in Section III, Dr. Millican-Wynn explained in relevant part that:

> Claimant can perform simple and some complex tasks. Claimant can relate to others on a superficial work basis. Claimant can adapt to a work situation in a reduced stress environment with flexible timeliness for work completion. Claimant cannot relate to

> the general public.
>
> Due to the [claimant's] depressive and anxiety symptoms in combination with her pain, her ability to maintain adequate attention, focus and pace is moderately impaired. Her overall psychological functioning moderately affects her overall functioning.

*Id.* at 231.

The ALJ incorporated Dr. Millican-Wynn's Section III assessment into Plaintiff's RFC, finding that Plaintiff is "able to perform simple and some complex tasks," is "able to relate to others on a superficial work basis," can "adapt to a work situation in a reduced stress environment with flexible timelines for work completion," and can perform "no customer service" and have "no public contact." *Id.* at 16.

Plaintiff alleges error however, because the ALJ did not specifically discuss the psychologist's check-box finding in Section I that Plaintiff has moderate limitations in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. Doc. 16, at 14-15. The undersigned disagrees, because the Tenth Circuit has recently found that an ALJ's failure to discuss a Section I finding is not reversible error.[4] *See Sullivan v. Colvin*, No. 12-5147, 2013 WL 950970, at *3

---

[4] Notably, the undersigned finds that Plaintiff's moderate limitation in her ability to perform activities within a schedule is adequately captured in the RFC limitation to a reduced stress environment with flexible timelines for work completion.

11

(10th Cir. Mar. 13, 2013).

In *Sullivan*, the state agency doctor had also checked a box indicating that the claimant was moderately limited in the ability to maintain a schedule, regular attendance and complete a normal workday. *Id.* On appeal, the claimant alleged that the ALJ committed legal error in failing to specifically discuss that limitation. *See id.* The Tenth Circuit disagreed, concluding that:

> According to the guidance in the Social Security Administration's Program Operations Manual System (POMS), "Section I of the Mental RFC Form is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment, whereas Section III – Functional Capacity Assessment, is for recording the mental RFC determination." *"It is in Section III that the actual mental RFC assessment is recorded, explaining the conclusions indicated in Section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." Id.* Thus, as the Magistrate Judge ruled, the ALJ accepted the state agency's ultimate opinion that, with all of the moderate limitations, Ms. Sullivan could perform unskilled work.

*Id.* (emphasis added, brackets and citations omitted).

Although unpublished, *Sullivan* is factually almost identical to the present case and its holding is in accordance with other courts who have examined the issue. *See, e.g., Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 636 (3d Cir. 2010) (holding that the claimant "cannot rely on the worksheet component of the [MRFCA]" and collecting cases in support); *Israel v. Astrue*, 494 F. App'x 794, 797 & n.1 (9th Cir. 2012) (noting that "[the claimant] cites [no authority] that

requires the ALJ to separately weigh and consider each checked box in Section I of the MRFCA" and citing the SSA's Program Operations Manual System); *Anderton v. Colvin*, No. 2:11-CV-00894-DN-DBP, 2013 WL 1284350, at *8 (D. Utah Mar. 4, 2013) (unpublished recommendation) (rejecting plaintiff's allegation that the ALJ was required to consider and discuss findings in Section I of the MRFCA form because Section III's narrative is the actual assessment), *adopted* 2013 WL 1282033 (D. Utah Mar. 27, 2013); *Sitzman v. Astrue*, No. 7:11CV5006, 2012 WL 1437281, at *8 (D. Neb. Apr. 25, 2012) (unpublished op.) ("'Because the actual assessment is contained in Section III, courts have consistently held that it is not error for an ALJ to omit restrictions identified in Section I in his RFC analysis.'" (citing *Kane v. Astrue*, No. 1:10CV1874, 2011 WL 3353866, at *3 (N.D. Ohio Aug. 3, 2011) (unpublished op.) (collecting cases in support)).

Plaintiff's arguments otherwise are unavailing. Plaintiff relies on two cases, *Haga v. Astrue*, 482 F.3d 1205 (10th Cir. 2007) and *Raney v. Astrue*, No. CIV-07-1053, 2008 WL 3875997 (W.D. Okla. Aug. 18, 2008) (unpublished op.). Doc. 16, at 13-14 & n.9; Doc. 21, at 8. In both cases, the ALJ's failure to discuss limitations noted on the RFC assessment form was found to be reversible error. *See Haga*, 482 F.3d at 1207-08; *Raney*, 2008 WL 3875997, at *3-4. However, both of these cases were decided *before* the relevant language in the SSA's

13

Program Operations Manual System (POMS) came into effect. *See* https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510060 (noting an effective date of October 14, 2010). As discussed above, in *Sullivan*, the Tenth Circuit applied the POMS simply to pinpoint where, exactly, the doctor's actual opinion can be found and held that it is in the narrative assessment in Section III rather than the limitations check in Section I. 2013 WL 950970, at *3.

Accordingly, the undersigned finds no reversible error in the ALJ's failure to specifically discuss Dr. Millican-Wynn's check-box finding in Section I of the MRFCA form.

## VII. Recommendation and notice of right to object.

For the reasons discussed above, it is recommended that the Commissioner's decision be affirmed.

The parties are advised of their right to object to this Report and Recommendation by the 15th day of July, 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 24th day of June, 2013.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE